UNITED STATES of America,
Plaintiff-Appellee,

v.

PENT–R–BOOKS, INC.,
Defendant-Appellant.

Nos. 625–644, Dockets 74–2281, 75–6014
to 75–6032.

United States Court of Appeals,
Second Circuit.

Argued March 29, 1976.

Decided June 28, 1976.

520

Herbert Monte Levy, New York City, for defendant-appellant.

Constance M. Vecellio, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., on the brief, Paul B. Bergman, Josephine Y. King, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellee.

Before OAKES and GURFEIN, Circuit Judges, and PIERCE, District Judge.[*]

PIERCE, District Judge:

This appeal, involving twenty cases consolidated for appellate purposes,[1] presents a variety of questions concerning the federal statute regulating the mailing of pandering advertisements, 39 U.S.C. § 3008 (the Pandering Law).[2]

The Pandering Law was enacted by Congress because of a concern about the growing number of complaints received by the Post Office Department and members of Congress concerning the repeated receipt by individuals of unsolicited mail which was found by the individuals to be sexually provocative and offensive. See Senate Report No. 801, U.S.Code Cong. & Admin.News, pp. 2258, 2294, 90th Cong. 1st Sess. (1967). The purpose of the statute was to provide a "procedure whereby any householder may insulate himself from advertisements that offer for sale 'matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative.' (citation omitted)." *Rowan v. Post Office Dept.*, 397 U.S. 728, 729–30, 90 S.Ct. 1484, 1487, 25 L.Ed.2d 736 (1970).

■ Subsection (b) of the statute requires the Postal Service, upon notification by an addressee that he has received such mail matter and upon his request, to issue an order to the sender directing the sender to refrain from further mailings to the addressees named in the order which may

---

[*] Honorable Lawrence W. Pierce, United States District Judge for the Southern District of New York, sitting by designation.

1. The docket numbers of these cases, all of which bear the caption *United States v. Pent-R-Books, Inc.*, are 74–2281 and 75–6014–75–6032.

2. In pertinent part, § 3008, originally enacted as Title III of the Postal Revenue Salary Act of 1967, 81 Stat. 645, 39 U.S.C. § 4009 (1964 ed., Supp. IV), provides:

"§ 3008. ˙ *Prohibition of pandering advertisements*

"(a) Whoever for himself, or by his agents or assigns, mails or causes to be mailed any pandering advertisement which offers for sale matter which the addressee in his sole discretion believes to be erotically arousing or sexually provocative shall be subject to an order of the Postal Service to refrain from further mailings of such materials to designated addresses thereof.

"(b) Upon receipt of notice from an addressee that he has received such mail matter, determined by the addressee in his sole discretion to be of the character described in subsection (a) of this section, the Postal Service shall issue an order, if requested by the addressee, to the sender thereof, directing the sender and his agents or assigns to refrain from further mailings to the named addresses.

"(c) The order of the Postal Service shall expressly prohibit the sender and his agents or assigns from making any further mailings to the designated addresses, effective on the thirtieth calendar day after receipt of the order. The order shall also direct the sender and his agents or assigns to delete immediately the names of the designated addresses from all mailing lists owned or controlled by the sender or his agents or assigns and, further, shall prohibit the sender and his agents or assigns from the sale, rental, exchange, or other transaction involving mailing lists bearing the names of the designated addressees.

"(d) Whenever the Postal Service believes that the sender or anyone acting on his behalf has violated or is violating the order given under this section, it shall serve upon the sender, by registered or certified mail, a complaint stating the reasons for its belief and request that any response thereto be filed in writing with the Postal Service within 15 days after the date of such service. If the Postal Service, after appropriate hearing if requested by the sender, and without a hearing if such a hearing is not requested, thereafter determines that the order given has been or is being violated, it is authorized to request the Attorney General to make application, and the Attorney General is authorized to make application to a district court of the United States for an order directing compliance with such notice.

"(e) Any district court of the United States within the jurisdiction of which any mail matter shall have been sent or received in violation of the order provided for by this section shall have jurisdiction, upon application by the Attorney General, to issue an order commanding compliance with such notice. Failure to observe such order may be punishable by the court as contempt thereof.

"(f) Receipt of mail matter 30 days or more after the effective date of the order provided for by this section shall create a rebuttable presumption that such mail was sent after such effective date.

                 *   *   *   *   *   *"

include the complainant and his minor children. Such a prohibitory order applies to all mailings of any kind from the sender to the named persons. *Rowan v. Post Office Dept., supra* at 734–35, 90 S.Ct. 1484. Subsection (c) provides that the prohibitory order shall be effective on the thirtieth day following receipt by the sender and requires the sender to take certain steps including deleting the names of the designated persons from its mailing lists to insure the effectiveness of the order.

Subsection (d) requires the Postal Service, when it believes that such a prohibitory order has been violated, that is, that a second mailing has been sent to one of the designated addressees, to serve upon the sender a complaint stating the reasons for its belief. Subsection (d) establishes a procedure for a hearing before the Postal Service, and provides that if the Postal Service determines that a prohibitory order has been violated, it may request the Attorney General to seek an order from a United States District Court directing compliance with the prohibitory order. Subsection (e) grants the district courts jurisdiction to issue such a compliance order and provides that failure to comply with such an order may be punishable by contempt proceedings.

In each of the twenty cases before us, a prohibitory order was issued by the Postal Service to appellant Pent-R-Books, Inc. (Pent-R) with respect to a designated addressee. Thereafter, it was brought to the attention of the Postal Service that individuals who had requested the prohibitory orders had received second mailings from Pent-R, whereupon complaints were issued and, thereafter, a determination was made by the Postal Service, either with or without a hearing, that the prohibitory orders had been violated. At the request of the Postal Service, the Attorney General brought these actions in the United States District Court for the Eastern District of New York seeking the issuance of compliance orders against Pent–R. The parties submitted the administrative record to the district court and made cross-motions for summary judgment without further proceedings in that court. In each of the twenty cases before us the district court entered an order granting the government's motion. It is from these orders that Pent-R appeals.

Pent-R's attacks on the judgments below range from charges that the Pandering Law is unconstitutional to claims that the administrative record before the district court was inadequate to support the entry of summary judgment in particular cases. First, Pent-R argues that the issue is moot, that there is no case or controversy, and that entry of compliance orders is not in the public interest because, since 1969 when the second mailings at issue were received by the complaining individuals, Pent-R has undertaken extensive efforts to assure that there is virtually no likelihood that the mailings would be repeated. Therefore, Pent-R argues, no purpose would be served by the issuing of compliance orders.

In support of this argument, Pent-R contends, as it did below, that as a result of sophisticated and costly computer operations instituted by the company since the enactment of the Pandering Law, it has effectively reduced the violation rate, that is, the number of valid complaints issued with respect to second mailings, to less than one quarter of 1% (0.025%) of the number of prohibitory orders issued to Pent-R in the last five years. In addition, Pent–R contends that repeated requests to the Postal Service and the Justice Department of the United States for suggestions as to how Pent-R could modify its computer operations to improve its performance have been unavailing. Pent-R urges that it has no desire or intention to violate any prohibitory orders it has received or will receive. Thus, Pent-R claims it was an abuse of discretion for the district judge to enter the compliance orders in these cases.

The principal authority on which Pent-R relies for its position is *Hecht v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). In that case the Supreme Court reviewed a ruling by the United States Court of Appeals for the District of Columbia which

had reversed an order of the district court declining to issue an injunction against a department store found to have violated provisions of the Emergency Price Control Act of 1942. The district court had ruled that although the fact of violation was clear, the mistakes made by the store had been made in good faith and with no intent to violate the law. *Hecht v. Bowles, supra* at 325, 64 S.Ct. 587. The Court of Appeals reversed, holding that where a violation was found, issuance of an injunction was mandatory. The Supreme Court reversed this holding of the court of appeals.

Appellant would have us read *Hecht* as standing for the proposition that where the issuance of an injunction would have no effect in bringing about better compliance with a particular statutory scheme it is an abuse of discretion to issue an injunction. Even assuming that the factual premise for such a proposition is present here, i. e., that issuance of an injunction would serve no purpose in promoting compliance with the Pandering Law, the Court's decision in *Hecht* simply does not support appellant's position. While the Supreme Court reversed the holding in *Hecht* that an injunction was mandatory whenever a violation was shown to have occurred, it specifically did not reach the question of whether the district court's refusal to enter an injunction was an abuse of discretion. It did not decide, or even imply, that it might be an abuse of discretion to issue an injunction in the factual circumstances of the *Hecht* case.

■ "In shaping equity decrees, the trial court is vested with broad discretionary power . . .." *Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). See *Hecht v. Bowles, supra* at 329–30, 64 S.Ct. 587. The statute under consideration here expressly empowers the district court to issue a compliance order upon application of the Attorney General,

once a finding has been made that a prohibitory order has been violated. § 3008(d) and (e). There is no suggestion in the statute that either the Postal Service or the district court must determine that there is danger of yet a further violation of a prohibitory order before a compliance order may be issued. Moreover, the compliance order is in the nature of a civil, not a criminal order and carries no penalty with it. As Judge Dooling stated, "compliance orders are not punitive, but directory . . . ." [3] Most importantly, however, we note that the court below herein did not issue compliance orders after having made a finding that an injunctive order would serve no purpose in furthering the goals of the statutory scheme. Rather, the court found that "[Pent-R's] liability to subjection to individual Compliance Orders of [the] court is the begetter of [it's] praiseworthy compliance effort. . . ." [4] We cannot say that Judge Dooling erred in this assessment. Nor do we find that under all the circumstances presented by these cases the district judge abused his discretion in entering compliance orders.[5]

■ Appellant's constitutional attacks on the Pandering Law takes the form of claims that the statutory scheme deprives Pent-R of rights under the First Amendment. This issue was decided by the Supreme Court in *Rowan v. Post Office Dept., supra,* adversely to the position now urged by Pent-R.

Pent-R's First Amendment argument rests squarely on its contentions that both the material which it mails and its right to communicate with willing recipients of its literature are protected by the First Amendment. In *Rowan,* the Court explicitly and categorically rejected "the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. If this prohi-

---

**3.** See unpublished opinion in 74–2281, cited in the Consolidated Joint Appendix (Appendix) at 92a–93a.

**4.** Id. at 93a.

**5.** The circumstances of these cases do not require us to decide whether, upon a showing of a violation of a prohibitory order, the district court is required to issue an order of compliance. It is sufficient for these purposes to determine that here the court did not abuse its discretion by doing so.

bition operates to impede the flow of even valid ideas, the answer is that no one has a right to press even 'good' ideas on an unwilling recipient." *Id.* 397 U.S. at 738, 90 S.Ct. at 1491. And it makes no difference what the particular merits of appellant's literature might be or whether it has been held not to be obscene, as Pent-R contends occurred in a prior judicial proceeding.[6]

Pent-R claims that to comply with the present statutory scheme it must screen out many names from its mailing lists in addition to the names of those who have requested prohibitory orders. It suggests that if certain modifications of the statute were made, such as requiring complaining recipients of literature to list alternative formulations of their names to which no mailings should be sent, Pent-R could comply with the statute without also eliminating the names of persons who have not requested prohibitory orders.

It appears that Pent-R's practice of eliminating these names has played no small part in bringing about its present excellent compliance record. Whatever the probable effect of the purposed statutory modifications, we must apply the statute as it exists, and we do not agree with the contention that the statute impermissibly infringes the constitutional rights Pent-R asserts it has with respect to its mailings.[7]

Appellant also contends that there is no justification for issuance of an injunction for a non-willful violation of a prohibitory order, particularly where such a violation occurred in connection with Pent-R's good faith efforts to exercise a First Amendment right to communicate with persons willing to receive its literature. Specifically, in several of the cases herein compliance orders were issued where the second mailings were to individuals whose names or addresses varied slightly from those listed on the prohibitory orders received by Pent-R, but who were in fact the same individuals.[8] Appellant claims that, as a practical matter, compliance with the Pandering Law is possible only through use of computer technology, and since a computer will necessarily read slight variations in names or addresses as being different persons, even though a reasonable person viewing them would conclude that they referred to the same individuals, the second mailings could not be found to be willful and should not result in an injunction. Appellant contends further that its present computer operations and techniques are designed to prevent any such second mailings even to slightly different name and address variations and therefore the cases as to these complainants are moot. Such mailings according to Pent-R, could now occur only by computer error and thus should not form the basis for an injunction. We are therefore presented with the question of whether the district judge erred in issuing a compliance order under the circumstances presented here where a mailing reached a previous complainant although it was directed to a name or address varying slightly from that contained in a prohibitory order. We hold that this was not error.

There is no contention by the appellant that the persons who received the second mailings in these cases were not the persons

---

6. See Appendix at 58a.

7. We find the appellant's further argument that the Postal Service uses the statutory scheme to accomplish censorship of sexually oriented materials to be without merit. Since it is the addressee who determines he does not want the mail delivered, there is no public censorship of the kind with which the Supreme Court was concerned in cases such as *Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).

8. For example: in 75–6031, the order prohibited mailing to B.W.S. Dodge at 122 Plantation Drive, Houston, Texas 77024; the second mailing was to B. Dodge at 122 Plantation Rd., Houston, Texas 77024. In 75–6028, the order prohibited mailing to Bradley W. Day at 16 Hemlock Trail, Trumbull, CT 06611; the second mailing was to B. W. Day at 16 Hemlock Trl., Trumbull, CT 06611. With respect to this particular instance, we note that the formulation of the addressee's name and address to which the second mailing was sent did appear on the prohibitory order although it appeared on that portion of the form which indicated who had previously received a mailing rather than on that portion of the form which purported to list those persons to whom future mailings were prohibited.

to whom appellant intended to direct the mailings, i. e., there is no contention that the mailings were misdirected by the Postal Service. Appellant's contention is rather that in intentionally sending matter to the persons to whom the second mailings were addressed, appellant did not intend to direct it to persons who had previously requested prohibitory orders. Therefore, contends Pent-R, no compliance order should have issued.

Addressing this issue, the district judge stated:

> "It is no doubt true that defendant's methods of doing business made it difficult to avoid violation in this respect. Its computerized lists betray it on such occasions. But unfortunately defendant must be treated as though it had only a few short lists and a personal consciousness of all of its acts. Orders are directed to persons not to electronic devices. The complexity of defendant's business is not a defense against the claim of an individual addressee who has obtained an order directing defendant to make no further mailings to him; the statute is addressed not to facilitating defendant's business or imposing the least costly constraints upon it but to protecting the rights of individuals to be free of what they regard as an unwelcome intrusion." [9]

Judge Dooling states it well. If the fundamental purpose of the Pandering Act, which is, as the Supreme Court stated in *Rowan, supra,* to permit "a citizen to erect a wall" against unwanted advertising, is to be served, then the occurrence of a violation of a prohibitory order must be considered sufficient to warrant issuance of a compliance order.

In discussing the role of the district court with respect to compliance order proceedings the Supreme Court has described its role as "similar to that of the Postmaster General [now the Postal Service]. It is to determine whether the initial mailing included advertising material and whether there was a mailing by the sender to the addressee more than 30 days after receipt of the order." *Rowan v. Post Office Dept., supra,* 397 U.S. at 739 n. 6, 90 S.Ct. at 1491. Nothing in the *Rowan* decision, the statute itself, or the legislative history supports appellant's view that a violation of a prohibitory order must be found to have been willful before a compliance order may issue. We decline to so hold here.

In so ruling, we note that the compliance order sought and issued pursuant to § 3008(d) and (e) is not in the nature of a general injunction against the appellant. Rather, it requires only specific compliance with a previously issued prohibitory order. Further, appellant does not contend that there is no possibility that it might engage in a further violation of the statute, but rather argues that no such violation could be willful since it could result only from a computer error and this would occur only in rare instances. The case is therefore clearly distinguishable from those cases where a district court has declined to issue an injunction because it has found that there is no likelihood that a future statutory violation will occur. See, e. g., *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 60–61, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *Hecht Co. v. Bowles, supra.* The argument with respect to willfulness is not properly raised at this stage of the statutory scheme. As Judge Dooling observed, willfulness and the good faith of appellant are considerations which would properly be considered by the court should a contempt proceeding be instituted following yet a third mailing. See, e. g., *United States v. Consolidated Productions, Inc.,* 326 F.Supp. 603 (C.D.Cal.1971).

Appellant also raises a number of objections to the district court's entry of summary judgment in particular cases. With respect to seven of these cases,[10] the objection requires an interpretation of the provisions of § 3008 which, under certain circumstances, create a rebuttable presumption that a second mailing was sent after

---

**9.** See Appendix 980a–981a.

**10.** The seven cases bear docket numbers 74–2281, 75–6014, 75–6021, 75–6022, 75–6023, 75–6026 and 75–6027.

the effective date of a prohibitory order and in violation thereof. Pent-R contends that the presumption applies only to second mailings received by the complainant more than sixty days after the receipt by the sender of a prohibitory order. The district judge ruled that it applied to second mailings received more than thirty days after the receipt of the prohibitory order.

Subsection 3008(f) provides that receipt of a second mailing thirty days or more after the effective date of a prohibitory order creates a rebuttable presumption that the mail was sent after the effective date and is therefore in violation of the order. Section 3008(c) provides that a prohibitory order shall be effective on the thirtieth calendar date after its receipt by the advertiser. Since Pent-R does not date its mailings and the government introduced no direct evidence as to the actual date on which the second mailings were sent, the applicability of the presumption was an issue in each of these cases.

Read literally, the statutory presumption becomes effective only if the second mailing is received more than thirty days after the effective date of the prohibitory order, that is, more than sixty days after the receipt of the prohibitory order by the sender. The district court reasoned however that:

"The statute cannot be supposed to have intended to double the grace period except in the case where the Post Office has evidence of the date of mailing. The use of the thirty day presumption period in exact correspondence with the thirty day period that precedes the effective date of the Prohibitory Order is the key to the meaning [of the statute]. If the offending mailing is shown to have been received after the effective date of the Prohibitory Order, it is presumptively a violation." [11]

The court below concluded therefore that there must have been a "semantic slip" in the phrasing of subsection (f), a slip which the court proposed to correct by striking the word "effective" in the first use of that word in subsection (f).

We believe the district judge erred in this construction of the statute. The literal meaning of the statute is clear. There is nothing in the legislative history to support the conclusion that this literal meaning was not what Congress meant. Further, contrary to the view urged by the government here, we believe Congress might well have had good reason for allowing an additional time period following the effective date of a prohibitory order before the presumption that the mailing was sent in violation of such an order became effective.

It does not strain the doctrine of judicial notice to observe that it is not uncommon for mailings, even within the same city, to take more than one day to travel from sender to recipient. In fact, there was evidence in the record below of advertisements placed by the Postal Service itself seeking to explain why it might take as long as four days for such mailings to be completed.[12] According to the interpretation given to the statute by the court below and advanced by the government here, any mailings received by an addressee on the thirty-first, thirty-second or any subsequent day after receipt by the sender of a prohibitory order would be presumed to have been sent no earlier than the thirtieth day after receipt of the order and therefore in violation of the order. In many cases such a presumption would not be correct. For example, if, as is likely, an undated mailing which had been sent on the twenty-ninth day after receipt by the sender of a prohibitory order were to be received on the thirty-first day, the mailing would be presumed to have been made in violation of the prohibitory order, although clearly this would not be the case. In contrast, under the interpretation of the statute urged by appellant, even allowing for extraordinary delay between the sending and receipt of a second mailing, the presumption created by subsection (f) that a mailing had been sent after the effective date of a prohibitory order would almost

11. See, e. g., unpublished opinion in 74–2281 cited at Appendix 106a–107a.

12. See, e. g., Appendix at 86a–87a.

invariably be correct if the mailing was received by the addressee more than thirty days after that effective date. In the absence of any evidence of a contrary Congressional intent regarding the presumption, we opt for the reading of the statute which is more likely to conform with the present day realities regarding delivery of mail.

In the seven cases with respect to which appellant has raised the issue of the construction of the statutory presumption the evidence contained in the administrative record purported to show that the second mailings were received on dates which were more than thirty, but less than sixty days after the effective dates of respective prohibitory orders. Since we disagree with the district court's interpretation of the presumption, we find that summary judgment was improperly granted in favor of the government in each of these cases.[13]

As previously stated, the cross-motions for summary judgment below were made and determined on the basis of the administrative records alone. Pent-R challenges the admissibility of much of this evidence on the dual grounds that the administrative records were inadequately certified and that certain of the evidence within those records was inadmissible hearsay. Pent-R claims, therefore, that this evidence was insufficient to support the granting of summary judgment for the government.

■ As a general proposition, administrative records may be a sufficient basis for the granting of a motion for summary judgment. See, e. g. *United States v. Lange,* 466 F.2d 1021, 1025 n. 5 (9th Cir. 1972); *Dredge Corp. v. Penny,* 338 F.2d 456, 460 (9th Cir. 1964). Pent-R claims, however, that the administrative records in the subject cases were inadmissible because they were certified, not by a custodian of records as required by Rule 44(a)(1), Fed.R. Civ.P.,[14] but by a postal official in Washington, D. C.[15] The district judge rejected this contention, principally because Pent-R had not argued that the administrative record produced was not in fact a true copy of the record. He also noted that Pent-R had been furnished copies of these documents in connection with the administrative proceedings, a statement disputed by Pent-R.

■ Whether or not Pent-R's contentions with respect to the requirements of Rule 44 are correct, we do not find that they require reversal in seven of these cases.[16] Rule 902 of the Federal Rules of Evidence, which would be applicable to these proceedings should we remand them,[17] has expanded the means by which official documents and copies thereof may be authenticated.[18]

---

13. The fact that the government has not shown that it is entitled to summary judgment based on the subsection (f) presumption does not mean, as appellant contends, that Pent-R should have been granted summary judgment below. It would appear, however, that judgment for appellant would be appropriate with respect to these cases unless the government produces direct evidence of the actual dates of mailings.

14. Rule 44(a)(1) Fed.R.Civ.P., provides:
   "(a) *Authentication.*
   "(1) *Domestic.* An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, or any entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by

his deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office."

15. See Brief for Appellant at 20.

16. These seven cases bear docket numbers 74–2281, 75–6019, 75–6027—75–6031.

17. See Public Law 93–595; 88 Stat. 1926.

18. Rule 902, Fed.Rules of Evidence, provides in pertinent part:
   "Rule 902. *Self-authentication*
   "Extrinsic evidence of authority as a condition precedent to admissibility is not required with respect to the following:

Rule 902(4) provides that copies of official records may be authenticated by certification of the custodian or *other person authorized* to make them, if the certification itself complies with other requirements set forth in the Rule. It is sufficient under subdivision (1), if the document bears a seal purporting to be that of a department or agency of the United States and a signature purporting to be an attestation or execution. The record reveals that these requirements were met with respect to the seven subject cases. As for the authority to make the certification, it has been suggested that the authority of the signatory "should be assumed on the basis of his certification alone." See 5 Weinstein's Evidence ¶ 902(4)(01) at 902–21. In the interest of expediting the disposition of these cases, we note the admissibility of the administrative records under the new Rules of Evidence and decline to reverse on the basis asserted by appellant.

The record on appeal in the other cases does not show compliance with the requirements of Rule 902. Nor can we agree with the district judge that the fact that Pent-R received copies of the documents in question or failed to contest their legitimacy— even if true—makes the documents admissible in evidence. We remand these cases for consideration, *inter alia,* of whether the administrative record meets the requirements

"(1) *Domestic public documents under seal.* A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

    \*    \*    \*    \*    \*    \*

"(4) *Certified copies of public records.* A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority."

    \*    \*    \*    \*    \*    \*

of Rule 902, Fed.Rules of Evidence, or Rule 44(a)(1), Fed.R.Civ.P.

■ However, Pent-R's claim that the certification in many cases fails to adequately describe the documents to which it applies need not be reexamined. We note that in each case the certification refers to the "annexed documents". In no case has Pent-R claimed, either here or below, that the documents admitted as part of the administrative record were not annexed to the certification. While it would be better practice in cases such as these to list the individual documents to which the certification is applicable, we cannot say that the failure to have done so rendered the documents submitted in these cases inadmissible in the district court or constitutes a basis for reversing the court's grant of summary judgment to the government in these cases.

■ Pent-R has also challenged the admissibility in the district court of envelopes which were in the administrative record and purported to contain entries made by the addressees indicating both the fact that a second mailing had been received and the date of its receipt by the addressee. Pent-R argues that since these entries were made by third parties and not by Postal Service employees, the district court erred in finding them admissible as business records pursuant to 28 U.S.C. § 1732(a).[19]

**19.** 28 U.S.C. § 1732(a), since superceded by Rule 803(6) FRE, provided at the time of the district court decisions as follows:

"1732. *Record made in regular course of business; photographic copies*
"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker,

Appellant's point is not without merit. However, having considered it, we find that we are persuaded by the reasoning of the Ninth Circuit in *United States v. Lange*, supra, at 1024–25 and elect to follow that reasoning with respect to this issue in the context of this statute.

The manner by which these records came into the administrative files is an inherently reliable standard operating procedure. The letters are forwarded to the Postal Service by persons acting on their own initiative who have previously requested and obtained prohibitory orders. They are forwarded for the purpose of implementing the next step in a statutory scheme designed to provide a benefit to the addressee. Their submission to the Postal Service by the addressee amounts to a demand upon the government that certain action be taken as required by law. And they contain notations which purport to be from the addressees and which are designed to furnish to the Postal Service the information needed for that body to determine whether or not a violation has occurred. Under all these circumstances, we find that in these cases the second mailing envelopes taken from the administrative files were properly found to be business records kept by the Postal Service and were admissible as such.

Having ruled on the admissibility of the evidence before the district judge, we turn now to Pent-R's alternative contention that, even if admissible, this evidence was insufficient in most cases to establish the government's right to summary judgment. In assessing a motion for summary judgment, one must distinguish between the moving party's initial burden, the type of showing which will meet that burden and shift it to the party opposing the motion, and the type of showing required of the party opposing the motion in order to defeat it.

■ Rule 56, Fed.R.Civ.P., requires that the moving party show, on the basis of admissible evidence adduced from persons

with personal knowledge of the facts, that "there is no genuine issue as to any material fact." See *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 71 (2d Cir. 1971). Where this initial showing is not made, summary judgment will be denied, even though the party opposing the motion has submitted no probative evidence to support its position or to establish that there is a genuine issue for trial. See *Adickes v. S. H. Kress & Co.*, supra 398 U.S. at 159–60, 90 S.Ct. 1598; Advisory Committee Note on 1963 Amendment to subdivision (e) of Rule 56. In other words, the party opposing the motion has the right to put the moving party to its proof. If, however, the moving party does carry its preliminary burden, then, the opposing party may not defeat the motion by relying on the contentions of its pleading. Rather, it must produce "significant probative evidence tending to support [it position]." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). See *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.*, 513 F.2d 102 (2d Cir. 1975).

In these cases, Pent-R did not submit evidence to the court below to counter the evidence contained in the administrative records. Rather, it relied on the contention that the evidence did not meet the government's burden on the motion. For a variety of reasons, the district court sustained the government's position with respect to each of these cases. We will examine each of the claims of error.

■ Pent-R claims that the administrative records were insufficient to establish that Pent-R received prohibitory orders on particular days because the return receipts submitted with the orders were inadequately identified with the particular orders to which they ostensibly referred. In this regard, we agree with the reasoning of the court below, set forth in a case which is not

may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

on appeal here, but which applies none-the-less. The court wrote:

"In the absence of any suggestion that the Prohibitory Order was not in fact received, the absence from the administrative record of an explicit and self-evident cross-reference between receipt and Prohibitory Order is not of moment. The receipt is produced from official custody as the relevant receipt in association with the Prohibitory Order. Its date is appropriate the signature is not challenged, the presence of the Prohibitory Order in defendant's files is not denied. That there might be confusion in the Post Office files does not support an inference that any particular receipt is in a false association." [20]

The records submitted were sufficient to require appellant to produce "probative evidence" that a particular prohibitory order was not received on the date shown by the record. It failed to do so.

Pent-R also contends that for a variety of reasons, several of which apply to a number of the cases on appeal, the administrative record failed to show that there was no genuine issue of material fact as to the receipt of the second mailing by the addressee at a time which would bring the § 3008(f) presumption of a violative mailing into play. These contentions are addressed to the sufficiency of the notations on the second mailing envelopes to establish the point at issue and, with respect to several of these contentions, we agree with appellant that the grant of summary judgment was inappropriate.

■ In four of the cases,[21] the envelopes did not sufficiently establish the dates on

which the mailings were received by the addressees, either because they contained no dates at all, or because the dates of receipt set forth on the envelopes were stated to be approximate, or because, although there was a date and what purported to be the signature of the addressee on the envelope, there was nothing on the envelope which indicated that the date shown was the date on which the addressee received the second mailing. See *United States v. Lange, supra* at 1026. However, where the envelope in question set forth the word "received" or some variant thereof followed by a date and what purports to be the signature or the initials of the addressee, we find that the evidence was sufficient to carry the government's burden on the question of when the second mailing was received.[22] Since Pent-R submitted no evidence to contradict this showing, we affirm the district court's finding with respect to these cases that there was no genuine issue of fact as to the date of receipt by the addressees of the second mailing from Pent-R.

As to three of the cases,[23] we agree with Pent-R that the envelopes submitted do not establish who received the envelopes on the dates which appear thereon. For example, where the writing on the envelope simply states that it was received on a particular date, it is possible that this was the date on which it was received by the post office after having been returned by the addressee rather than the date on which the addressee received it from the sender. Thus, in these three cases, the government failed to show the absence of material fact regarding the date of receipt of the second mailing.

20. See Brief for Appellant at 43.

21. The four cases bear docket numbers 75–6016, 75–6018, 75–6020, 75–6025.

22. The cases in which the notations meet these requirements bear docket numbers 75–6014, 75–6015, 75–6021, 75–6024, 75–6027, 75–6031, 75–6032. We also affirm the district court's finding on this point with respect to 75–6028. Pent-R has presented nothing from which we can conclude that its contention that the administrative judge's finding as to when the

second mailing was received was unsupported by the evidence. Likewise, we affirm the finding on this point with respect to 75–6030 where Pent-R's only complaint is that the date was supplied by a Mrs. E. R. Oetken, while the addressee was listed as E. R. Oetken. In fact, the administrative record indicates that it was Mrs. E. R. Oetken who requested the prohibitory order. See Appendix at 1629a.

23. The three cases bear docket numbers 74–2281, 75–6017 and 75–6031.

■ Finally, Pent-R claims that summary judgment was improperly granted with respect to a number of cases either because there were two different handwritings on the envelope, one of which indicated when it was received and one of which indicated who received it, or because the handwriting on the envelope failed to match what purported to be the handwriting of the addressee appearing elsewhere in the administrative record. In either case, Pent-R asserts that the discrepancy leaves an issue of fact as to whether or not the addressee received the second mailing on the date indicated or whether the date was entered later by some other person and had some other significance.

Where it is apparent that two handwriting specimens are from the same hand, the mere assertion they differ is not sufficient to raise a question of fact for trial. In most of the cases in which Pent-R has raised this claim, we have examined the record and we find that the district judge did not err in concluding that there was no genuine issue of fact with respect to this matter. In two cases, we sustain appellant's contention that the government failed to carry its initial burden of proof by failing to offer any explanation for what are apparently markedly different handwritings appearing in the record.[24]

The final objections which appellant raises to the judgments entered below deal with the adequacy of the administrative procedures used by the Postal Service in handling these cases before they were referred to the Attorney General and brought before the district court. In particular, appellant attacks the adequacy of the notice it received of the charges, the alleged denial of an appeal within the Postal Service as provided for by the applicable regulations,[25] and the ruling by the Postal Service that appellant had forfeited its right to an administrative hearing by failing to mail its request for a hearing in such a way that it was actually *received* by the appropriate postal official within the fifteen days allowed for *filing* such a request.[26]

■ We have some doubt about the adequacy of the manner in which the administrative proceedings were handled in many of these cases. In particular, we agree with appellant that the Postal Service's interpretation of its regulations as requiring that requests for hearings be *received* within fifteen days allows for self-serving delay by the Service in delivering such requests through the mail. However, we find that the fact that the Postal Service required that requests for a hearing be *received,* as opposed to mailed, within fifteen days was harmless error in these particular cases.

Subsection (d) of the statutory scheme calls for a second hearing before the district court before a compliance order may be issued. As previously indicated, the Supreme Court has stated that the determinations to be made by the trial judge at this hearing are the same determinations which are to be made by the Postal Service official at the administrative hearing. See *Rowan v. Post Office Dept., supra* 397 U.S. at 739 n. 6, 90 S.Ct. 1484. We interpret this requirement to mean that the district court hearing is to be de novo and appellant is to be permitted to raise any issues which might have been raised at the administrative level. See *United States v. Lange, supra* at 1024, 1026; *Rowan v. Post Office,* D.C., 300 F.Supp. 1036, 1046 (Hufstedler, *J.,* concurring), *affirmed,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736. Accordingly, we find no ground for reversal in Pent-R's claims of administrative error in these cases.

We have examined appellant's other assignments of error and find them to be without merit. In accordance with the reasons set forth in this opinion, we affirm the judgment of the district court with respect to four of the cases before us [27] and reverse

---

24. These cases bear docket numbers 75–6015 and 75–6031.

25. See 39 C.F.R. § 916.12.

26. See Id. at § 916.3.

27. The judgments are affirmed in the cases bearing docket numbers 75–6019, 75–6028—75–6030.

and remand with respect to the other cases [28] for further proceedings not inconsistent with this opinion.

**28.** The judgments are reversed in the cases bearing docket numbers 74–2281, 75–6014— 75–6018, 75–6020—75–6027, 75–6031—75– 6032.