**STANLEY–FIZER ASSOCIATES, INC., Plaintiff,**

v.

**SPORT–BILLY PRODUCTIONS ROLF DEYHLE, Rolf Deyhle, Telemundi, A.G., and Wolfgang Stein, Defendants.**

**No. 85 Civ. 2491 (RWS).**

United States District Court, S.D. New York.

May 4, 1988.

---

Nathan M. Ferst, New York City, for plaintiff.

Roy R. Kulcsar, New York City, for defendants.

## OPINION

SWEET, District Judge.

Defendants Sport–Billy Productions Rolf Deyhle, Rolf Deyhle, Telemundi, A.G., and Wolfgang Stein (collectively, "Sport–Billy") have moved for an order pursuant to Fed. R.Civ.P. 56 granting summary judgment in their favor dismissing the complaint of plaintiff Stanley–Fizer Associates, Inc. ("Stanley–Fizer") and awarding them damages and other relief requested in their counterclaims against Stanley–Fizer. Upon the findings and conclusions set forth below, the motion for summary judgment is granted.

*Prior Proceedings*

Stanley–Fizer commenced this action on April 1, 1985 by filing an order to show cause and a complaint requesting an order enjoining Sport–Billy from (1) terminating an agency agreement between Stanley–Fizer and Sport–Billy, (2) employing any individual or entity other than Stanley–Fizer for the purposes of procuring license agreements for the marks referred to in the complaint, and (3) entering into direct licensing agreements without the participation of Stanley–Fizer. Following an evidentiary hearing held on April 12, 1985, Stanley–Fizer's request for a preliminary injunction was denied in an opinion dated April 28, 1985 (the "Prior Opinion"), familiarity with which is assumed. A brief discussion of the Prior Opinion is necessary to identify the issues that remained in dispute following the denial of the request for a preliminary injunction.

Sport–Billy owns proprietary rights and holds trademarks and copyrights on certain marks and designs. Stanley–Fizer acts as an agent for companies wishing to license their trade names and trademarks. On December 3, 1982, Sport–Billy entered into an agreement with Stanley–Fizer (the "1982 Agreement") pursuant to which Stanley–Fizer was appointed Sport–Billy's exclusive agent "for the purpose of seeking out and recommending to [Sport–Billy] license agreements ... relating to the commercial use of the Marks and Designs [1] in" the

---

1. Exhibit A I to the 1982 Agreement listed the following "Marks and Designs" as covered by the agreement:

  1. *Sport Billy*
    –Sport–Billy, Lilly, Willy and all other characters of the cartoon series "Sport–Billy"
      –Logo "Sport–Billy"
      –Emblem "Sport–Billy"
      –Reproductions of FAIR PLAY Trophies other than FIFA

2. *FIFA* (Federation Internationale de Football Association)
    –FIFA Emblem
    –FIFA World Cup Trophy
    –FIFA Mascot "Sport–Billy"
    –FIFA FAIR PLAY TROPHY
3. *FIS* (Federation Internationale de Ski)
    –FIS Emblem
4. *ACM* (Automobile Cub [sic] de Monaco) and related marks included [sic]
    –Grand Prix de Monaco
    –Rallye Monte–Carlo

United States and Canada. The 1982 Agreement was to expire December 31, 1986.

The Prior Opinion concluded that Sport–Billy had lawfully terminated the 1982 Agreement as of April 10, 1985 due to Stanley–Fizer's failure to pay to Sport–Billy royalty payments in the amount of $8,123.80 that Stanley–Fizer had received during the last quarter of 1984. The Prior Opinion also found that by letter to Stanley–Fizer dated March 18, 1985, Sport–Billy had requested payment of an interest-free loan in the amount of $21,034.26 that Sport–Billy had advanced to Stanley–Fizer on October 4, 1984 and which was payable from royalties received by Stanley–Fizer prior to the end of December 1985.

At the time of the hearing on the preliminary injunction, Stanley–Fizer contended that its nonpayment of the royalty payments and the loan was justified because Sport–Billy breached the 1982 Agreement by (1) requiring that all funds earned under license agreements with third parties be paid directly to Sport–Billy, (2) terminating the agreement in order to deprive Stanley–Fizer of commissions it would earn on license agreements resulting from the 1986 World Cup Soccer Tournament in Mexico (the "1986 World Cup"), including what has been referred to as the "Mexican coin program," and (3) using an entity referred to as Sports Excellence Marketing, Inc. ("Sports Excellence") as an alternate licensing agent.

As noted in the Prior Opinion, at the time of the preliminary injunction, Stanley–Fizer failed to substantiate these allegations of improper activity by Sport–Billy. In particular, the Prior Opinion noted (a) that Sport–Billy was within its rights under paragraph 3(a)(iv) of the 1982 Agreement when it sought direct payment by licensees, (b) that although Sport–Billy had the right under paragraph 1(d) of the 1982 Agreement to enter license agreements directly without the assistance of Stanley–Fizer, there was no showing that Sport–Billy had entered into such contracts, (c) that Stanley–Fizer had failed to rebut Sport–Billy's assertion that Sports Excellence was simply an extension of Sport–Billy itself and, therefore, was free to conclude licensing agreements as provided by paragraph 1(d) of the 1982 Agreement, and (d) that documentary evidence indicated an understanding by both parties that marks related to the 1986 World Cup were not within the scope of the 1982 Agreement. Concluding that "Stanley's evidence at this early stage does not indicate either a likelihood of success or the existence of substantial grounds for litigation," the Prior Opinion denied the request for injunctive relief without prejudice to "Stanley's ultimate success on the issues in dispute."

*Facts*

The following facts are set forth in Sport–Billy's unrebutted statement pursuant to Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Pursuant to paragraph 3(a)(iv) of the 1982 Agreement, Stanley–Fizer was authorized to receive on behalf of Sport–Billy, at its request, royalty payments from licensees. Paragraph 3(b) provided that Stanley–Fizer would hold such royalty payments in trust for Sport–Billy. Paragraph 3(d) authorized Stanley–Fizer to deduct its commissions from the monies held in trust and to remit the balance to Sport–Billy thirty days after the end of each calendar quarter. The royalty statement issued to Sport–Billy by Stanley–Fizer for the last quarter of 1984 indicated that Stanley–Fizer had received a total of $11,605.44 in royalty payments of which $8,123.80 was due to Sport–Billy by the end of January 1985.

In October 1984, Stanley–Fizer sent a letter to Sport–Billy confirming the former's receipt of a loan in the amount of $21,034.26 (the "October 1984 loan") from the latter to be repaid to Sport–Billy from royalties received by Stanley–Fizer prior to the end of December 1985.

On February 22, 1985, Sport–Billy sent a telex to Stanley–Fizer requesting an explanation for Stanley–Fizer's failure to trans-

fer royalty payments for the last quarter 1984 to Sport–Billy. On March 18, 1985, Sport–Billy again wrote to Stanley–Fizer requesting payment of royalties in the amount of $8,123.80. On March 31, 1985, Stanley–Fizer responded by telex stating, "Your demand for transmittal of monies is contrary to our agency agreement. Your demand for repayment is incorrect and we owe you no monies." Thereafter, by telex dated April 1, 1985, Sport–Billy advised Stanley–Fizer that it would terminate the 1982 Agreement if Stanley–Fizer failed to remit to Sport–Billy the outstanding royalties by April 10, 1985. Stanley–Fizer commenced this action on April 1, 1985 and did not pay any monies to Sport–Billy.

Sport–Billy's Rule 3(g) Statement also states that Sport–Billy never entered into any license agreement in connection with the Mexican coin program, that licensing activities for the 1986 World Cup Soccer Program were not within the scope of the 1982 Agreement, and that Sport–Billy did not enter into any direct license agreements for marks covered by the 1982 Agreement. Although Sport–Billy concedes that on June 5, 1984, it established Sports Excellence as its head office for the United States and Canada and appointed it a non-exclusive agent for licensing activities not covered by the 1982 Agreement, Sport–Billy contends that Sports Excellence did not obtain licenses for any marks covered by the 1982 Agreement.

*Conclusions*

In order to grant summary judgment, this court must determine that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City*

*of New York,* 762 F.2d 243, 249 (2d Cir. 1985). Summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire,* 804 F.2d at 12.

Here, there is no dispute as to Stanley–Fizer's failure to perform its obligations under paragraph 3(d) of the 1982 Agreement and its failure to repay the October 1984 loan. Where, as here, the moving party has carried its preliminary burden of showing that there is no genuine issue of material fact, "the opposing party may not defeat the motion by relying on the contentions of its pleading. Rather, it must produce 'significant probative evidence tending to support'" its position. *United States v. Pent–R–Books, Inc.,* 538 F.2d 519, 529 (2d Cir.1976) (quoting *First National Bank v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Moreover, once the moving party has established the absence of a triable issue, "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam). Finally, in this District, all material facts set forth in the moving party's Rule 3(g) Statement will be deemed to be admitted unless controverted by a 3(g) Statement submitted by the opposing party.

■ After more than eighteen months of discovery and having requested and received three adjournments of Sport–Billy's motion for summary judgment, Stanley–Fizer has failed to submit a Rule 3(g) Statement setting forth genuine issues of material fact that are in dispute. Instead, Stanley–Fizer has submitted the affidavit of its president, Joan Stanley, to which are attached the same documents that accompanied its original order to show cause. The Stanley Affidavit repeats allegations from plaintiff's prior pleadings but fails to substantiate the allegations with any documentary or other evidence. Thus, although the Stanley Affidavit alleges that Sport–Billy through Sports Excellence entered into a

license agreement with a Korean entity named IlYa, there has been no showing or allegation that IlYa was licensed to exploit any of the marks that were subject to the 1982 Agreement. Stanley–Fizer's contention that Sport–Billy was involved with other agents in breach of the 1982 Agreement remain unsubstantiated.

The Stanley Affidavit also contends that under the 1982 Agreement, it was agreed that Stanley–Fizer would have the rights to exploit the marks and coin program arising out of the 1986 World Cup in Mexico. With respect to the coin program, the 1982 Agreement is silent, and Stanley–Fizer does not challenge Sport–Billy's statement that, in any event, Sport–Billy did not consummate any arrangement with regard to a coin program for the government of Mexico.

■ With respect to Stanley–Fizer's claim of rights to all marks related to the 1986 World Cup, the language of the 1982 Agreement fails to support plaintiff's claims. First, the Federation Internationale de Football Association ("FIFA") marks that were included within the 1982 Agreement were the FIFA Emblem, FIFA World Cup Trophy, FIFA Mascot "Soccer-Billy," and FIFA Fair Play Trophy. Stanley–Fizer has failed to rebut Sport–Billy's contention that the limited reference to "FIFA World Cup Trophy" in the 1982 Agreement did not encompass all rights that Sport–Billy might acquire with respect to the 1986 World Cup. Nothing in the papers submitted by Stanley–Fizer indicates that Sport–Billy licensed directly or indirectly any of the four specific FIFA marks covered by the 1982 Agreement to any party other than through Stanley–Fizer.

Further, Stanley–Fizer has not submitted any evidence to contravene the Prior Opinion's conclusion that written communication between the two parties during May 1984 establishes that both parties understood that marks related to the 1986 World Cup were not covered by the 1982 Agreement. Attached to Stanley–Fizer's moving papers is a copy of a proposed agreement that Stanley–Fizer sent to Sport–Billy sug-

gesting that the 1982 Agreement be amended, *inter alia*, to include a fifth category of marks as follows:

5. *FIFA WORLD CUP 1986*
   – Emblem FIFA World Cup 1986
   – Mascot FIFA World Cup 1986
   – Related marks and denominations regarding World Cup 1986

This proposed amendment was never agreed to by Sport–Billy.

Under New York law, where the intention of the parties to a contract is clearly and unambiguously set forth, courts will give effect to the intent as indicated by the language used. *Slatt v. Slatt*, 64 N.Y.2d 966, 488 N.Y.S.2d 645, 646, 477 N.E.2d 1099, 1100 (1985). Exhibit A–I manifests the intent of the parties that the 1982 Agreement would cover four specific FIFA marks. There has been no showing that Sport–Billy licensed those four marks to or through parties other than Stanley–Fizer. In addition, documentary evidence establishes that rights to marks related to the 1986 World Cup that Sport–Billy may have licensed without the assistance of Stanley–Fizer were not included within the scope of the 1982 Agreement.

■ In sum, Stanley–Fizer has failed to submit any evidence to justify its failure to pay Sport–Billy royalties owed to it in the amount of $8,123.80 in accordance with paragraph 1(d) of the 1982 Agreement or to support its claim that it is entitled to offset its own losses under the 1982 Agreement with the retained royalties and the proceeds of the October 1984 loan from Sport–Billy, which became payable at the end of December 1985. Therefore, upon the findings and conclusions set forth above, Sport Billy's motion for summary judgment is granted.

The parties are directed to submit judgment in accordance with the above upon ten (10) days notice.

IT IS SO ORDERED.