For the reasons above stated the decision appealed from is *affirmed*.

JACKSON, Judge, retired, recalled to participate.

WORLEY, Judge, concurs in the conclusion.

O'CONNELL, Judge, was present at the argument of this case, but, because of illness, did not participate in the decision.

COLE, Judge, because of illness, did not participate in the hearing or decision of this case.

SANDOZ CHEMICAL WORKS, INC. v. UNITED STATES (No. 4855)[1]

[1] C. A. D. 623.

United States Court of Customs and Patent Appeals, June 20, 1956

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for appellant.

*Warren E. Burger*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Murray Sklaroff*, trial attorney, of counsel), for the United States.

[Oral argument February 8, 1956, by Mr. Weeks and Mr. Sklaroff]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, one judge dissenting, entered pursuant to its decision, C. D. 1702, overruling the protest filed by appellant against the rate of duty applied by the Collector of Customs on an importation of homatropine hydrobromide.

The Collector of Customs classified the imported merchandise for duty under the provisions of paragraph 28 (a) of the Tariff Act of 1930 at 45 per centum ad valorem and 7 cents per pound. The pertinent portion of this paragraph of the statute is:

Par. 28.  Coal-tar products:
(a) * * * acetanilide suitable for medicinal use, acetphenetidine, acetylsalicylic acid, antipyrine, benzaldehyde suitable for medicinal use, benzoic acid suitable for medicinal use, betanaphthol suitable for medicinal use, guaiacol and its derivatives, phenolphthalein, resorcinol suitable for medicinal use, salicylic acid and its salts suitable for medicinal use, salol, *and other medicinals * * * all the foregoing products* provided for in this paragraph, when obtained, derived, or manufactured in whole or in part from any of the products provided for in Paragraph 27 ,or 1651 * * * 45 percentum ad valorem and 7 cents per pound. [Italics added.]

The appellant, insofar as pertinent here, claimed in his protest that the imported mechandise should have been classified under the provisions of paragraph 45 of the Tariff Act of 1930 at the rate of 10 cents per pound.  This paragraph reads as follows:

Par. 45—Bromine and all bromine compounds not specially provided for, 10 cents per pound.

It was stipulated by counsel that the homatropine hydrobromide covered by the protest is an ester of tropine and mandelic acid chemically combined with hydrobromic acid, and that the mandelic acid is

obtained, derived, or manufactured in part from toluene. It is to be noted that toluene is one of the products provided for in paragraph 1651 of the Tariff Act of 1930, and that paragraph 1651 is referred to in paragraph 28 (a), *supra.*

It appears from the record that the collector's classification of the homatropine hydrobromide was based on the portion of paragraph 28 (a), *supra*, which reads "and other medicinals * * * all the foregoing products provided for in this paragraph, when obtained, derived, or manufactured in whole or in part from any of the products provided for in paragraph 27 or 1651 * * *."

In the proceedings before the Customs Court, five witnesses appeared in behalf of appellant and seven in behalf of the appellee. It was brought out by appellant's witnesses, who were obviously qualified, that homatropine hydrobromide is used by ophthalmologists as a mydriatic, for dilating the pupil of the eye, and as a cycloplegic, for paralyzing the muscles of accommodation of the eye. In the foregoing capacities, homatropine hydrobromide is used for the purpose of diagnosis in the examination of the eye. Appellant's witnesses further testified that the drug has neither therapeutic nor medicinal qualities in that it is not used for treatment or cure of diseases.

Insofar as pertinent here, one of appellee's witnesses, a physician specializing in surgery of peripheral vascular diseases testified to his use of homatropine hydrobromide in the treatment, cure, and alleviation of peripheral vascular spasm, a condition of the blood vessels, and biliary dyskinesia, a spasm of the sphincter muscle. Relative to the use of the drug in the latter capacity, the witness testified that the drug acts as an alleviative in that it accomplishes a curative or healing result. It was further stated by the witness that homatropine hydrobromide is administered intravenously, intramuscularly, or orally.

It is clearly established by the testimony that the overwhelming use of homatropine hydrobromide is as a mydriatic or cycloplegic for diagnosing conditions of the eye. However, the testimony shows that the drug is also used for treatment of body disorders.

The Customs Court held that homatropine hydrobromide falls within the class of "other medicinals" provided for in paragraph 28 (a), *supra*, and sustained the collector's classification. In reaching its decision, the majority of the court held that the word "medicinal" as used in paragraph 28 (a), *supra*, merely required that the compound in question be suitable for medicinal use and did not require that the *chief use* of the compound should be for medicinal purposes.

On appeal, appellant in essence contends that in order to be classified under paragraph 28 (a), *supra*, as a medicinal, homatropine hydrobromide must be *chiefly used* for alleviating body disorders; that the chief use of homatropine hydrobromide is for diagnosis and not for

alleviation of body disorders; and that the classification of homatropine hydrobromide under paragraph 28 (a), *supra*, is therefore in error. It is to be noted that appellant draws a distinction between diagnosis of disease and cure of disease, and claims that "medicinal," as used in the statute, refers only to the latter. Appellant further contends that even if it should be determined that homatropine hydrobromide can be included within paragraph 28 (a), *supra*, it should be dutiable under paragraph 45, *supra*, under the rule of relative specificity.

One of the appellee's contentions is that when Congress used the phrase "and other medicinals" in paragraph 28 (a), *supra*, its intent was to embrace products used in diagnosing disease. Relative to appellant's second contention, appellee urges that "medicinals" is a use designation, and that the courts have consistently held that a use provision is more specific than a general class designation.

There are two questions before us on appeal. The first is whether the imported homatropine hydrobromide is a "medicinal" within the meaning of paragraph 28, *supra*, because it is chiefly used for diagnosis rather than for the cure of disease. The second question is whether the rule of relative specificity would result in the classification of homatropine hydrobromide under paragraph 45, *supra*, rather than paragraph 28 (a), *supra*.

In order to answer the first question, it becomes necessary to determine the meaning of the term "medicinal" as it is used in the statute. In the present case the common meaning of the term "medicinal" is involved, and it is well settled that the courts in determining the common meaning of a term may as an aid consult the dictionaries, lexicons, and written authorities as to such common meaning. *United States* v. *Tropical Craft Corp.*, 42 C. C. P. A. (Customs) 223, C. A. D. 598, and cases cited therein.

Webster's New International Dictionary, 1939 and 1949 editions, give the following definition:

medicinal, n. 1. A medicinal substance.

The adjective "medicinal" which is used to define the noun "medicinal" has the following meanings:

medicinal adj. 1. Curative or alleviative; * * * 2. Of or pertaining to medicine; medical. Obs.

Relative to the second definition of the adjective "medicinal," the noun "medicine" which appears therein has the following meanings:

medicine n. 1. Any substance or preparation used in treating disease. 2. (a) The science and art dealing with the prevention, cure, and alleviation of disease. (b) In a narrower sense, that part of the science and art of restoring and preserving health which is in the province of the physician as distinguished from the surgeon and obstetrician.

It can readily be seen from the foregoing definitions that if the second meaning of the adjective "medicinal" is defined according to definition 2 (b) of the word "medicine," the noun "medicinal" (which is used in the statute) will have a meaning which is not in accordance with the meaning urged by appellant that a medicinal must be used for the alleviation or cure of disease and not for the diagnosis of disease.

It is to be further noted that the Funk and Wagnall's New Standard Dictionary of the English Language gives the following definitions:

medicinal n. (Rare)—Any medicine or medicinal substance.

medicinal adj.—Of or pertaining to medicine; adapted to heal or mitigate bodily diseases.

medicine n.  1. A substance possessing or reputed to possess curative or remedial properties; 2. The healing art; the science of preservation of health and of treating disease for the purpose of cure, * * *.

It can readily be seen that if the noun "medicinal" is traced through the meanings given for the adjective "medicinal" and noun "medicine," it can very logically have a meaning which is: *a substance which pertains to the healing art.*  Thus, according to this source also, the noun "medicinal" which is used in the statute can have a meaning which is different from the meaning urged by appellant that a "medicinal" must be used for the alleviation or cure of body diseases and not for the diagnosis thereof.

The foregoing analyses of the dictionary definitions were made for determining the meaning of the noun "medicinal."  In our opinion, it is susceptible of more than one meaning.  The first meaning is that a medicinal must be used for the treatment, cure, or alleviation of disease.  The second meaning is that it is a substance which is susceptible of use in the medical arts.  Either meaning can be logically used in the statute.

The question therefore arises as to which meaning should be adopted for the purposes of interpreting paragraph 28 (a), *supra.* If the first meaning is adopted, then the appellant's contention could be sustained.  On the other hand if the second meaning is adopted, then the appellee's contention must be sustained and the judgment of the Customs Court should be affirmed.

Since different meanings logically can be given to the word "medicinal," it is readily apparent that the statute can be considered ambiguous.  It is well settled that where a statute is ambiguous, extrinsic aids can be resorted to for its construction.  *United States* v. *Perry Ryer & Co.,* 41 C. C. P. A. (Customs) 18, C. A. D. 524.  It is also well settled that the master rule to be used in the construction of tariff statutes is to ascertain the legislative intent.  *United States* v. *Herman H. Sticht & Co.,* 22 C. C. P. A. (Customs) 40, T. D. 47048; *United States* v. *Clay Adams Co., Inc.,* 20 C. C. P. A. (Customs) 285, T. D. 46078, and cases cited therein.  In the past we have resorted

to the *Summary of Tariff Information* for the purpose of ascertaining the legislative intent. *United States* v. *J. L. Hudson Co.*, 23 C. C. P. A. (Customs) 313, T. D. 48177. (Also see *United States* v. *Weigert-Dagen, et al.*, 39 C. C. P. A. (Customs) 58, C. A. D. 464, where Digests of Trade Data were relied on by this court to resolve an ambiguity in a trade agreement.) We find it necessary to resort to the *Summary of Tariff Information* in the present case to resolve the ambiguity in the statute.

The *Summary of Tariff Information*, 1929, on Tariff Act of 1922 was compiled for the Committee on Ways and Means, House of Representatives. In the "Foreword" of Volume I, the following is stated:

\* \* \* \* \* \* \*

This volume is a comprehensive summary of available tariff information and was compiled by the United States Tariff Commission for the use of the Committee on Ways and Means, in connection with an examination of the Tariff Act of 1922, for the purpose of making any readjustments in said act where found necessary.

The request for the preparation of this material was made on December 6, 1928, and the summary on the first schedule was made available to the committee, in a tentative, unrevised form, when the hearings on that schedule began on January 7, 1929; thereafter these preliminary prints were made available, schedule by schedule. This volume is the revised, permanent form.

Each summary contains descriptive and economic data on the commodities or group of commodities provided for in the Tariff Act of 1922, arranged in accordance with the paragraphs of the act. The topics covered are as follows:

1. Description and uses of the commodity.

\* \* \* \* \* \* \*

On page 145 of the above-noted *Summary of Tariff Information*, 1929, the following appears under the heading "Medicinals" as applied to paragraph 28, *supra*.

## MEDICINALS

Description and uses—From the viewpoint of national welfare the production of a variety of synthetic coal-tar drugs is of great importance. *These products have a diversified application in the treatment and diagnosis of disease.* The majority of them are of recent introduction in medicine. The most important from the medical standpoint is arsphenamine (salvarsan). [Italics added].

It is to be further noted that the same paragraph appeared on page 81 of the *Summary of Tariff Information*, 1921, Relative to the Bill H. R. 7456 (which was subsequently enacted into the Tariff Act of 1922).

It thus appears to us that the above-cited respective Summaries of Tariff Information were before Congress when both the Tariff Act of 1922 and the Tariff Act of 1930 were passed. It is to be further noted that the wording of paragraph 28 of the Tariff Act of 1922 was not changed when the Tariff Act of 1930 was passed.

In view of the foregoing, it is our opinion that Congress meant the word "medicinal," as used in the statute, to be any substance which is capable of being used in the medical profession for either diagnosis or treatment of disease, this meaning being entirely consistent with the dictionary definitions of the term.

In reaching the foregoing conclusion, we have not overlooked the cases of *Britt, Loeffler & Weil* v. *United States*, 7 Ct. Cust. App. 118, T. D. 36428, and *Dodge & Olcott* v. *United States*, 130 Fed. 624 (1891) which are relied on by appellant.

In *Britt, Loeffler & Weil* v. *United States, supra*, it was stated that the term "medicinal" as it appeared in paragraph 17 of the tariff Act of 1913 included the meaning of "curative" or "adapted to heal or mitigate bodily diseases." It was therefore held that a substance which also gave nourishment to the body in addition to acting as a "curative" was not excluded from classification under said paragraph 17.

In *Dodge & Olcott* v. *United States, supra*, insofar as pertinent here, it was stated that as far as the word "medicinal" was concerned, it was confined to something "which is of use * * * in curing or alleviating, or palliating or preventing, some disease or affection of the human frame." This case arose under paragraph 93 of the tariff act of 1883.

In our opinion, neither of the foregoing cases are apposite. First of all the definitions which were given related to the term "medicinal" which was used in paragraphs of the tariff acts which were worded very differently from paragraph 28 (a), *supra*. Furthermore, it is significant to note that neither of these cases ever considered whether a "medicinal" could be used for the diagnosis of disease because this question was not before the courts.

In our opinion, it would be unwise to restrict the meaning of the word "medicinal" to that given thereto in prior cases which were decided under different statutes, different facts, and where the precise question present in the instant case was never considered. We are therefore of the opinion that the cases cited by appellant are not controlling of the question in the present case.

In view of the foregoing, we conclude that the word "medicinal" as used in paragraph 28 (a), *supra*, includes substances which are used in the medical profession for diagnosis of disease.

We now come to appellant's second contention, namely that the rule of relative specificity controls classification and that paragraph 45, *supra*, should prevail over paragraph 28, *supra*. The substance of the rule of relative specificity is that where an item appears to be properly classifiable under different paragraphs, the proper classification is under the paragraph which describes the item more specifically. 25 C. J. S. Customs Duties § 23. In determining relative

specificity, it is well settled that a designation by a specific use prevails over a designation of general character without special limitation as to use or other qualification. *Drakenfeld & Co.* v. *United States,* 9 Ct. Cust. Appls. 124, T. D. 37979, and cases cited therein.

In the present case, it can readily be seen that paragraph 28 (a), *supra,* relates to use whereas paragraph 45, *supra,* relates to general character. Therefore, in view of the above-cited law, we are of the opinion that the imported homatropine hydrobromide was properly classified under paragraph 28 (a), *supra.* See *United States* v. *Lo Curto & Funk,* 17 C. C. P. A. (Customs) 19, T. D. 43319, wherein it was held that copper thiocyanate was properly classified by use under "all medicinal preparations" recited in paragraph 5 of the Tariff Act of 1922 rather than under paragraph 1565 which read "* * * all cyanide salts and cyanide mixtures, combinations, and compounds containing cyanide * * *," on the ground that paragraph 5, being a use designation was more specific than the above-noted paragraph 1565. Also see *Drakenfeld & Co.* v. *United States, supra.*

We have carefully considered the arguments advanced by appellant, but we are of the opinion that for the foregoing reasons the judgment of the Customs Court should be *affirmed.*

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, Judge, was present at the argument of this case, but, because of illness, did not participate in the decision.

COLE, Judge, because of illness, did not participate in the hearing or decision of this case.