**RICO IMPORT CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 91–01–00070.

United States Court of
International Trade.

Aug. 27, 1992.

Glad & Ferguson, Edward N. Glad, Los Angeles, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Carla Garcia–Benitez, Washington, D.C. (of counsel: Arlene Klotzko, Attorney, Office of the Asst. Chief Counsel, U.S. Customs Service), for defendant.

## OPINION AND ORDER

CARMAN, Judge:

The subject merchandise, known as *Arundo Donax* tubes, were imported by Plaintiff, Rico Import Co., and liquidated by the United States Customs Service at the rate of duty of 3 percent *ad valorem* under subheading 4602.10.50, Harmonized Tariff Schedule of the United States (1990) ("HTSUS"), as an article made directly to shape from other vegetable plaiting materials. Plaintiff protested the liquidations, claiming that the *Arundo Donax* tubes were properly classifiable free of duty under subheading 1404.90.00, HTSUS, as "[v]egetable products not elsewhere specified or included ... Other." The protests were denied.

After Plaintiff filed its complaint, Defendant counterclaimed asserting that the *Arundo Donax* tubes are specially provided for in subheading 1401.90.40, HTSUS, which encompasses "[v]egetable materials

of a kind primarily used for plaiting ... Other," dutiable at 3.8 percent. Because Defendant is no longer pursuing its original classification under subheading 4602.-10.50, it is deemed abandoned. The action is before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.

■ "Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The meaning of a classification term is a question of law, *Digital Equip. Corp. v. United States*, 889 F.2d 267, 268 (Fed.Cir. 1989); hence, because the parties have stipulated to all material facts in this case, summary judgment is appropriate.

For the reasons that follow, the Court finds that the subject merchandise as imported is properly classifiable as set forth in the government's counterclaim. Accordingly, Defendant is entitled to summary judgment as a matter of law.

The pertinent provisions of the HTSUS are as follows:

AS COUNTERCLAIMED BY DEFENDANT:

| Heading/ Subheading | Article Description | Rate of Duty |
|---|---|---|
| 1401 | Vegetable materials of a kind used primarily for plaiting (for example, bamboos, rattans, reeds, rushes, osier, raffia, cleaned, bleached or dyed cereal straw and lime bark):<br>  * * * * | |
| 1401.90.40 |   Other: [except bamboos or rattans]<br>  * * * * | |
| | Other [except willow] ............................ 5%   [2] | |
| | [2] See heading 9903.10.19 | |
| 9903.10.19 | Other vegetable materials of a kind used primarily for plaiting (provided for in subheading 1401.90.40) ............3.8% | |

---

HTSUS CHAPTER 14 NOTES

*Notes*

2. Heading 1401 applies, *inter alia*, to bamboos (whether or not split, sawn lengthwise, cut to length, rounded at the ends, bleached, rendered non-flammable, polished or dyed), split osier, reeds and the like, to rattan cores and to drawn or split rattans. The heading does not apply to chipwood.

AS CLAIMED BY PLAINTIFF:

| 1404 | Vegetable products not elsewhere specified or included:<br>  * * * * |
|---|---|
| 1404.90.00 |   Other [except used primarily ........................Free in dyeing or tanning, or cotton linters] |

---

*Stipulated Facts*

1. *Arundo Donax* (or giant reed) is a tall perennial grass of the family Poaceae which usually measures from 6 to 23 feet tall, and which grows in dense clumps.

2. The poles of the *Arundo Donax* plant may be used for basket weaving; for manufacturing furniture cane sheeting (mats used for patio covers; for privacy with chain link fences; for protection at construction sites from falling debris, et cetera); for use in construction projects, such as porches, roofs, et cetera; and for manufacturing musical reeds.

3. The merchandise covered by this civil action, described in the invoices as clarinet and saxophone cane of *Arundo Donax* tube, consists of denoded tubular sections of *Arundo Donax* (hereinafter referred to as 'the *Arundo Donax* tubes').

4. The *Arundo Donax* tubes imported by Rico Import Co. are obtained from the *Arundo Donax* plant.

5. The poles of the *Arundo Donax* plant are processed as follows to transform them into the imported *Arundo Donax* tubes:

*Arundo Donax* poles of 18 to 24 foot length are harvested in the winter months while in a dormant state. They are left to cure in the harvested state, kept away from direct sunlight, but with good air circulation, for from 4 to 6 months. The leaves and husks are then removed and the poles are cut to useable lengths of 6 to 8 feet (the upper smaller portion of the pole is discarded and burned). The poles are then sunned for approximately 10 days to 2 weeks and stored to continue drying for a few more months. After the drying period the nodes are removed and the resulting internodes are gauged.

The pieces are then sorted into 2 diameter sizes, one being up to 24 millimeters in diameter and the other from 24 to 27 millimeters. There is also a specification as to the thickness of the wall of the reed pieces. They are then packed in sacks and exported to the United States, and after importation, they are used for musical instruments.

6. The *Arundo Donax* tubes are a vegetable product.

7. The *Arundo Donax* tubes are not a raw vegetable material of the kind used primarily in dyeing or tanning and are not cotton linter.

8. The said merchandise in its condition as imported is actually used only to make reeds for musical instruments.

9. The *Arundo Donax* tubes in their condition as imported cannot be plaited.

10. In their condition as imported, the *Arundo Donax* tubes may be separated into thin strips.

*Stipulation of Agreed Statement of Facts* ("Stip. Facts").

### Discussion

■ It is well settled that tariff acts must be construed to carry out the intent of the legislature. *Nippon Kogaku (USA), Inc. v. United States*, 69 CCPA 89, 92, 673 F.2d 380, 382 (1982) (citing *Sandoz Chem. Works, Inc. v. United States*, 43 CCPA 152, 156, C.A.D. 623 (1956)). The first place to look to establish the intent of Congress is the language of the statute itself. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The Court may resolve ambiguities in the plain language of a statute by resorting to legislative history and other extrinsic sources. *Sandoz Chem. Works*, 43 CCPA at 156.

The only issue before the Court is whether the merchandise in its condition as imported does or does not fall within the class of materials covered under subheading 1401.90.40, HTSUS. To reach that determination, the Court must resolve the question of whether the pre-importation transformation of the *Arundo Donax* poles into *Arundo Donax* tubes makes the latter something other that encompassed by subheading 1401.90.40. There appears to be no disagreement between the parties that unprocessed, raw *Arundo Donax* is encompassed by subheading 1401.90.40.[1]

Defendant argues that the plain language of subheading 1401.90.40 encompasses the *Arundo Donax* tubes. Defendant reasons that because subheading 1401 and Chapter Note 2 to Chapter 14, HTSUS, specifically list "reeds" as an example of a vegetable material of a kind primarily used for plaiting, and the *Arundo Donax* tubes are derived from the *Arundo Donax* plant,

1. For example, in its reply brief, Plaintiff states that "the *Arundo Donax* tubes in their condition as imported *are no longer* raw vegetable material of a kind used primarily for plaiting." Pl. Reply at 3 (emphasis added).

itself a reed,[2] the tubes must necessarily be classified under subheading 1401.90.40.

■ While the argument has a certain simplistic appeal, it evades the underlying issue here. The plain language of the subheading states that only vegetable materials, reeds or otherwise, that are of a "kind primarily used for plaiting" are covered.[3] In this case, the parties have stipulated that because of the described pre-importation processing of the *Arundo Donax* poles, the poles in their condition as imported *cannot* be plaited. Stip.Facts ¶¶ 5, 9. Hence, the plain language of the subheading does not conclusively support Defendant's claimed classification.

Relying upon the Explanatory Notes to the Harmonized System ("Explanatory Notes") drafted by the Customs Cooperation Council,[4] Defendant sets forth an alternative argument that subheading 1401.-90.40 is not limited to vegetable materials that are suitable for plaiting as imported.

The Explanatory Notes to heading 1401 make clear that raw vegetable plaiting materials are not the only types of vegetable materials encompassed by item 1401.90.40:

> [H]eading [1401] covers raw vegetable materials of a kind used primarily for the manufacture, by joining or plaiting, of articles such as mats and matting, trays, basket-ware of all kinds (including baskets for packing fruit, vegetables, oysters, etc.), hampers, valises, furniture (e.g., chairs and tables), hats, etc. *These raw materials may also be used for the manufacture of brushes, umbrella handles, walking sticks, fishing rods, pipe stems, coarse ropes, etc.*, for the manufacture of paper pulp, or as litter.

Explanatory Notes, Chapter 14 (emphasis added). Furthermore, the Explanatory Notes specifically name *Arundo Donax* as being included under heading 1401:

> The heading covers, *inter alia*, the following raw materials:
>
> \* \* \* \* \* \*
>
> (3) Reeds and rushes, collective terms applied to many herbaceous plants which grow in damp places, both in temperate zones and in the tropics.... The best known varieties include water rushes (*Scirpus lacustris*), common or wild reeds (*Arundo donax* and *Phragmites communis*)....

■ The Court concludes that while Plaintiff is correct that classification of imported merchandise is determined by its condition as imported,[5] a particular import's actual susceptibility to plaiting does not appear to be controlling under subheading 1401.90.40, HTSUS.

Defendant further urges that case law and the Explanatory Notes support the conclusion that vegetable materials such as *Arundo Donax* are not removed from coverage under subheading 1401.90.40 by virtue of the pre-importation processing in this case.

> The Joint Committee on the Omnibus Trade and Competitiveness Act recognized the CCC's Explanatory Notes to the Harmonized System as the CCC's official interpretation of the Harmonized System. *See* 23 Cust.Bull. 379, 380–81, T.D. 89–80 (1989). The Joint Committee stated that the Explanatory Notes, while drafted subsequent to the Harmonized System and not considered binding on the contracting parties, are nevertheless "useful in ascertaining the classification of merchandise under the system." *Id.* at 381.

---

2. *See* Stip.Facts ¶ 1 (referring to *Arundo Donax* as "giant reed"); *see also Websters Third International Dictionary* 1906 (unabridged ed. 1986) (the term "reed grass" encompasses *Arundo*).

3. Moreover, subheading 1401.90.40 is not an *eo nomine* designation for reeds; hence, that subheading does not provide for all forms of reeds.

4. The Customs Cooperation Council ("CCC") is an international body that was responsible for developing the Harmonized Commodity Description and Coding System, the structure of which the United States used to replace the Tariff Schedules of the United States. The new Harmonized Tariff Schedule was implemented in the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107 (1988). The HTSUS became effective on January 1, 1989.

5. *See United States v. Citroen*, 223 U.S. 407, 414–15, 32 S.Ct. 259, 260, 56 L.Ed. 486 (1912); *Amersham Corp. v. United States*, 5 CIT 49, 53, 564 F.Supp. 813, 815 (1983), *aff'd*, 2 Fed.Cir. (T) 33, 728 F.2d 1453 (1984).

The above-described processing of the *Arundo Donax* poles prior to shipment was examined by the Customs Court in *Rico Prod. Co. v. United States,* 44 Cust. Ct. 100, C.D. 2159 (1960) and *J.E. Bernard & Co. v. United States,* 41 Cust.Ct. 1, C.D. 2011 (1958). in *J.E. Bernard,* sticks from *Arundo Donax* that were obtained by a nearly identical process as the *Arundo Donax* tubes in the instant case were found to be "in the rough." 41 Cust.Ct. at 4. In that case, the government argued, unsuccessfully, that the processing to which the *Arundo Donax* was subjected was far enough advanced to remove the merchandise from the category of sticks and other woods "in the rough" found at paragraph 1806 of the Tariff Act of 1930.

The Explanatory Notes to Chapter 14 of the HTSUS make clear that heading 1401 was intended to cover vegetable materials that have been subjected to a degree of processing:

> [V]egetable plaiting materials fall in this heading whether or not washed and whether raw, or split in strips, peeled, polished, bleached, prepared for dyeing, dyed, varnished or lacquered, or rendered noninflammable. The goods of the heading may also be cut to length, whether or not rounded at the ends (straw for making drinking straws, canes for making fishing-rods, bamboos for dyeing, etc.), or assorted in bundles or hanks which may be lightly twisted for convenience of packing, storage, transport, etc.

Explanatory Notes, Chapter 14. Similarly, the Chapter Notes to heading 1401, HTSUS, indicate that the heading applies to vegetable products "whether or not split, sawn lengthwise, cut to length, rounded at the ends, bleached, rendered nonflammable, polished or dyed."

■ It is well established in customs jurisprudence that the processing necessary to transform an article from its raw state into its condition as imported does not amount to an alteration in value or condition unless the merchandise's *per se* character is affected. *See Hampton, Jr. & Co. v. United States,* 6 Ct.Cust.Appls. 392, 395,

T.D. 35926 (1915). The Court has carefully reviewed the described pre-importation processing to which the *Arundo Donax* poles are subjected and finds that none of that processing prevents the classification of the imports under subheading 1401.90.40; the pre-importation processing did not change the essential raw vegetable character of the *Arundo Donax.*

Based upon the Explanatory Notes and the Customs Court's conclusions in *J.E. Bernard* regarding the nearly identical *Arundo Donax* processing as in the instant case, this Court concludes that Congress intended the subject imports be encompassed by subheading 1401.90.40, HTSUS.

■ Plaintiff also suggests that since the only actual use of the subject imports in their condition as imported is to make reeds for musical instruments, the imports are not properly classifiable under subheading 1401.90.40. The Court notes, however, that the actual use to which the individual imported merchandise is put is not controlling; classification is determined on the basis of the chief use of articles of that class generally. *United States v. Colibri Lighters,* 47 CCPA 106, 109, C.A.D. 739 (1960). As discussed, Plaintiff has not convinced this Court that the *Arundo Donax* tubes in their imported condition are sufficiently advanced or altered so as to remove them from the class of vegetable products encompassed by subheading 1401.90.40, HTSUS.

### Conclusion

For the reasons above, this Court finds that the subject imports herein described as *Arundo Donax* tubes, are properly classifiable under Defendant's counterclaimed classification, subheading 1401.90.40, HTSUS. Accordingly, it is hereby ORDERED that Plaintiff's motion for summary judgment is denied and Plaintiff's complaint is dismissed. It is further ORDERED that Defendant's cross-motion for summary judgment is granted. It is further ORDERED that the subject imports be reliquidated at the statutory rate applicable under subheading 1401.90.40, HTSUS, and that Plaintiff shall pay the

United States the difference between the amount originally assessed upon the liquidation of the imported merchandise and the amount found to be owing upon reliquidation.

Judgment will enter accordingly.