PFAFF AMERICAN SALES CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 91-03-00202

(Dated December 18, 1992)

*Grunfeld, Desiderio, Lebowitz & Silverman (Steven P. Florsheim),* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney-In-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Pamela G. Larrabee*) for defendant.

## MEMORANDUM OPINION AND ORDER

GOLDBERG, *Judge:* This case is before the court on cross-motions for summary judgment. Plaintiff challenges the United States Customs Service's ("Customs") tariff classification of Hobbylock sewing machines, model numbers 783, 784, 796, 797 and 603A with standard ac-

cessories, under the Harmonized Tariff Schedules of the United States ("HTSUS") subheading 8452.10.00 as "Sewing machines of the household type". Plaintiff seeks summary judgment under USCIT R. 56(a) sustaining its claimed classification of the sewing machines under HTSUS subheading 8452.21.90 as "Other sewing machines: Automatic Units: Other", or, in the alternative, under subheading 8452.29.90 as "Other sewing machines: Other: Other." Defendant moves the court for summary judgment sustaining Customs' classification.[1]

## BACKGROUND

Plaintiff, Pfaff American Sales Corporation ("Pfaff"), is the importer of record of the merchandise at issue which entered the United States between January 1989 and June 1990. The merchandise was classified upon liquidation by Customs under HTSUS subheading 8452.10.00 as "Sewing machines of the household type."

Plaintiff filed timely protests pursuant to 19 U.S.C. 1514(a) (1988) contesting Customs' classification. Customs subsequently denied the protests. After paying all liquidated duties, plaintiff timely commenced this action. On September 23, 1991, plaintiff's motion for test case designation was granted.

## THE PARTIES' CLAIMS

Plaintiff claims that summary judgment is proper as there is no genuine issue of material fact in dispute. Furthermore, plaintiff claims that only traditional sewing machines that use a bobbin to produce a lockstitch in which two threads interlock in the material are classifiable as "Sewing machines of the household type." Therefore, since the subject sewing machines do not use a bobbin to produce a stitch where two threads interlock in the material, plaintiff is entitled to judgment as a matter of law. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment "Plaintiff's Memorandum" at 16.)

Plaintiff also argues that even if plaintiff were to concede for the sake of argument that a variety of lockstitch can be produced without the use of a bobbin, summary judgment in its favor should still be granted. The stitch produced is actually an overedge stitch, which is not a lockstitch. (Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment at 5.)

Defendant also claims that it is entitled to summary judgment maintaining there is no genuine issue of material fact in dispute. The government contends, as a matter of law, that the subject machines, which

---

[1] The HTSUS provisions in dispute are as follows:

| 8452 | Sewing machines, other than book-sewing machines of heading 8440; furniture, bases and covers specially designed for sewing machines; sewing machine needles; parts thereof: | |
|------|------|------|
| 8452.10.00 | Sewing machines of the household type | 3.7% |
| 8452.21.90 | Other sewing machines | |
| | Automatic units: | |
| | Other | 2.5% |
| 8452.29.90 | Other sewing machines | |
| | Other: | |
| | Other | 2.5% |

produce an overlock stitch, clearly fall within the common meaning of the tariff term "Sewing machines of the household type." Defendant asserts that "Sewing machines of the household type" include sewing machines capable of producing at least one of a variety of lockstitches. Defendant, moreover, claims that certain varieties of lockstitch can be produced by sewing machines that do not have a bobbin as a component part. Defendant's proposed definition would thus include not only traditional lockstitch machines using a bobbin as claimed by plaintiff, but also other types of sewing machines as well that produce a line of sewing in which at least two threads interlock. (Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment "Defendants Memorandum" at 17.)

Defendant also claims that the stitch produced is not an overedge stitch as asserted by plaintiff, but an overlock stitch. (Defendant's Reply Brief in Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment at 13.)

DISCUSSION

### 1. *Standard of Review:*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The party opposing summary judgment may not rest on its pleadings, but must respond with specific facts showing the existence of a genuine issue for trial. *See International Cargo & Surety, Ins. Co. v. United States,* 15 CIT 541, 779 F. Supp. 174, 176 (1991); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56 (e)); *United States v. Pent-R-Books, Inc.,* 538 F.2d 519 (2nd Cir. 1976), *cert. denied* 430 U.S. 906 (1977); and *Stevens v. Barnard,* 512 F.2d 876 (10th Cir. 1975). All ambiguities are to be resolved and all reasonable inferences drawn in favor of the party opposing summary judgment. *Carter Footwear v. United States,* 10 CIT 618, 620 (1986). If there remains a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant, summary judgment must be denied. *Bantam Travelware Div. of Peter's Bag Corp. v. United States,* 11 CIT 137, 139 (1987).

### 2. *The Meaning of HTSUS Term "Sewing Machines of the Household Type":*

The court must in the instant case find for the plaintiff if the subject sewing machines are not considered "of the household type." The issue before the court, therefore, is when is a sewing machine considered to be "of the household type."

The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 889 F.2d 267, 268 (1989). It is well set-

tled that tariff acts must be construed to carry out the intent of the legislature. *Rico Import Co. v. United States,* 16 CIT 770, 797 F.Supp. 1028, 1030 (1992) (citing *Nippon Kogaku (USA), Inc. v. United States,* 69 C.C.P.A. 89, 673 F.2d 380, 382 (1982)). The first place to look to establish the intent of Congress is the language of the statute itself. *Id.* at 1028, 1030 (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980)). It is presumed that Congress framed the tariff acts according to the general usage and denomination of the trade. Consequently, tariff terms are to be construed in accordance with their common and commercial meaning. *Toyota Motor Sales, U.S.A., Inc. v. United States,* 7 CIT 178, 182, 585 F. Supp. 649 (1984) (citing *Nippon Kogaku (USA), Inc. v. United States,* 69 C.C.P.A. 89, 673 F.2d. 380 (1982)). The Court may resolve ambiguities in the plain language of a statute by resorting to legislative history and other extrinsic sources such as dictionaries, lexicons, scientific authorities. *Rico Import,* 797 F. Supp. at 1028, 1030 (citing *Sandoz Chem. Works Inc. v. United States,* 43 C.C.P.A. 152, 156, (1956)).

In support of its motion for summary judgment, plaintiff asserts that the Explanatory Notes ("ENs") to the Harmonized System ("HS") should be treated as controlling legislative history to the corresponding heading or subheading in the HTSUS. Plaintiff argues that the EN to the corresponding HTSUS subheading 8452.10.00[2] provides that, at a minimum, a sewing machine "of the household type" must be capable of producing a lockstitch. (Plaintiff's Memorandum at 9.)

The government argues that ENs do not constitute controlling legislative history of the HTSUS. Defendant asserts that the status of ENs was addressed by Congress in the report of the Joint Committee on the Omnibus Trade and Competitiveness Act of 1988. T.D. 89–80, 23 Cust. Bull. 379, 381 (1989). H.R. Conf R. No. 100–576, 100th Cong., 2d Sess. at 549. With respect to the significance of the ENs, Congress specifically stated that the ENs are the Customs Cooperation Council's interpretation of the international system, the HS, but not the official interpretation of the tariff enacted by Congress, the HTSUS. (Defendant's Memorandum at 13.) Based on the above, the court finds that while the ENs offer insight into the scope of HTSUS subheadings, they are not controlling.

It is not the job of the court to define the term for all purposes, but to construe it within the framework of the case before it, bearing in mind

---

[2] HS subheading Explanatory Note to subheading 8452.10 reads in full:

Subheading 8452.10 applies only to the following sewing machines and sewing machine heads, all of which are capable of at least lock-stitch operation:

(a) foot or hand powered machines;
(b) machines incorporating an electric motor of an output not exceeding 120 watts:
(c) machines for powered operation presented without a motor, the weight of the machine head not exceeding 16 kg.

The subheading **does not**, however, **include** sewing machines dedicated to a specific function such as button holing or filled bag closing.

The Harmonized Commodity Description and Coding System Explanatory Notes, (1986) at 1259–61.

the descriptions set forth in the dictionaries. *W.R. Filbin & Co. v. United States,* 63 Cust. Ct. 200, 205, 306 F. Supp. 440 (1969).

The court notes that it is undisputed that in order for a sewing machine to be "of the household type" it must be capable of producing a lockstitch. (Plaintiff's Memorandum at 16 and Defendant's Memorandum at 15.) Accordingly, the court must examine the following definitions of the term "lockstitch" put forward by plaintiff and defendant respectively.

Plaintiff relies on a number of sources, among these the McGraw-Hill, *Encyclopedia of Science & Technology,* 16, at 312 (1987) which, under the term "sewing machine", describes the formation of a "lockstitch" by an "ordinary two-threaded machine." The description refers to the formation of the lockstitch through the application of "* * * shuttle carrying *a bobbin of under thread* * * *." (Plaintiff's Memorandum at 19 (emphasis added).) To the same effect is the following description contained in the *Encyclopedia Americana,* 24, at 634 (1988):

> A lockstitch machine uses an eyepointed needle with a thread supply, and a shuttle and *bobbin assembly* with another thread supply. The machine sews two or more pieces together with a lockstitch, which consists of two threads that interlock in the material * * *. Most home sewing machines are either straight lockstitch machines or zigzag lockstitch machines.

(Plaintiff's Memorandum at 19 (emphasis added)).

Defendant relies on the common definition of lockstitch found in Fairchild's, *Dictionary of Textiles* 357 (6th ed.) as "a line of sewing formed by locking of two threads together, as in the work done by most sewing machines." (Exhibit M to Defendant's Memorandum.) Defendant also cites a description found in Funk & Wagnall's, *New International Dictionary of the English Language* 748 (Comprehensive ed. 1987) which defines lockstitch as "a stitch made by two interlocking threads, as on some sewing machines." (Exhibit N to Defendant's Memorandum.)

In support of its claim, the defendant submits the affidavit of Stephen A. Smith, Chairman of the Apparel Manufacturing Department at the Fashion Institute of Technology in New York City. Mr. Smith states that the Pfaff Hobbylock sewing machines at issue are sewing machines of the household type since they are versatile, multi-functional and produce a form of lockstitch. Mr. Smith's opinion is based upon the physical characteristics of the machine as well as sales and instruction materials describing the use of the machines and the terms of sales warranty. He further states that the machines are not designed for the high volume mass production of articles characteristic of industrial machines. Based on various dictionaries, he concludes that according to the common definition of lockstitch, the overlock stitch produced by the Pfaff Hobbylock sewing machines is a form of lockstitch in that it forms a line of sewing in which at least two threads interlock.

In support of its claim, plaintiff submits the affidavits of Patti Palmer, CEO, Palmer/Pletsch & Associates, publisher of educational material for the home sewing industry; Jeffrey Bloemker, Technical Manager, Pfaff American Sales Corp.; and Henry A. Sesselberg, Director of Advanced Apparel Manufacturing Technology Programs at the Fashion Institute of Technology in New York City. According to the affidavits, the Hobbylock sewing machine and the conventional lockstitch home sewing machine are completely different machines. The home sewing machine can, depending upon its sophistication, produce a variety of lockstitches, but at a minimum produces a straight lockstitch. All stitches produced by lockstitch machines have one common characteristic in that they require the use of a bobbin to lock the top (needle) thread with the bottom (bobbin) thread in the middle of the fabric being sewn. The Pfaff Hobbylock sewing machines involved in this case are incapable of producing a lockstitch since they do not employ the use of a bobbin in stitch production. The stitches produced by the subject machines are wholly unlike — in appearance and function — the various forms of lockstitches produced by lockstitch sewing machines that employ the use of a bobbin. The use of the subject machines is not limited to home or domestic use. Neither the weight nor the operating speeds nor price of the subject machines, requires that they be classified as being of the household type, since a number of industrial type sewing machines have similar characteristics.

The above indicates that the ability to produce a lockstitch is an essential element in the common and commercial meaning of the tariff term "Sewing machine of the household type." The evidence regarding the common and commercial meaning of the term "lockstitch" is, however, contradictory. While all of the sources cited by plaintiff require the use of a bobbin in order to lock the top and bottom threads in the middle of the fabric being sewn, the sources cited by defendant do not. The sources cited by defendant merely require the interlocking of at least two threads. The evidence presented does not shed light on which of the sources cited provides the most complete definition in law considered within the context of the instant case.

3. *Capabilities of Hobbylock Sewing Machines:*

The question of whether plaintiff's merchandise actually fits within the tariff term "Sewing machines of the household type" is a question of fact. *E.M. Chemicals v. United States,* 9 Fed. Cir. (T) at 33, 35, 920 F.2d 910, 912 (1990). Based on the above, the evidence before the court is contradictory as to whether the Hobbylock sewing machines have the capability required to be characterized as of "the household type", that is the ability to actually produce a lockstitch.

### CONCLUSION

The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States,* 8 Fed. Cir. (T) 5, 889 F.2d 267, 268 (1989). The court must construe tariff terms in accordance with their common and com-

mercial meaning. *Nippon Kogaku (USA), Inc. v. United States,* 69 C.C.P.A. 89, 673 F.2d 380 (1982). In the instant case, the evidence before the court as to the common and commercial meaning of the tariff term "Sewing machine of the household type" is contradictory.

At the same time, the court finds that material questions of fact remain regarding the actual capabilities of plaintiff's merchandise.

Clearly, further development of the record before the court is required. Summary judgment is accordingly inappropriate. The court, therefore, denies both plaintiff's and defendant's motion for summary judgment.